FILED
2020 NOV 16 PM 12:42
CLERK
U.S. DISTRICT COURT

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| MARYLEEN JOHNSON, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br>v.<br><br>BLENDTEC, INC., *et al.*,<br><br>        Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>Case No. 1:19-cv-83-JNP-DAO<br><br>District Judge Jill N. Parrish |

Before the court is a Motion to Dismiss brought by Defendants Blendtec, Inc. and K-Tech Holdings, Ltd. (collectively, "Blendtec" or "Defendants"). ECF No. 19. The court entertained oral argument on the pending motion on October 21, 2020. Having reviewed all of the memoranda[1] and considered the oral arguments raised, the court GRANTS the Motion to Dismiss in part and DENIES the Motion to Dismiss in part.

## BACKGROUND

Plaintiff Maryleen Johnson ("Ms. Johnson") brings this putative class action, on behalf of herself and others similarly situated, against Blendtec on the basis of Blendtec's allegedly false and misleading claims regarding the horsepower ("HP") capacity of its blenders. Ms. Johnson asserts claims based on breach of express warranty; breach of the implied warranty of merchantability; unjust enrichment; negligent misrepresentation; fraud; violation of the Utah

---

[1] The court also reviewed Plaintiff's Notice of Supplemental Authority, filed on October 22, 2020. ECF No. 28.

Consumer Sales Practices Act ("UCSPA"), UTAH CODE §§ 13-11-1, *et seq.*; and violation of the Virginia Consumer Protection Act ("VCPA"), VA. CODE §§ 59.1-200, *et seq.*. Ms. Johnson seeks, on behalf of herself and the putative class, declaratory relief; "actual, compensatory, statutory, and/or punitive damages"; prejudgment interest on all amounts awarded, restitution and "all other forms of equitable monetary relief"; injunctive relief; and "reasonable attorneys' fees, expenses, and costs of suit." ECF No. 2 at 33.

In September 2018, Ms. Johnson purchased a Blendtec-brand blender—specifically, the Designer 650 model—online, while in her home state of Virginia. ECF No. 2 ¶ 6. Ms. Johnson purchased her Blendtec blender from the Home Shopping Network ("HSN") website. *Id.* At the time of her purchase, Ms. Johnson understood HSN to be acting with the knowledge and approval and/or as the agent of Blendtec. *Id.* Ms. Johnson also understood that, though she was purchasing her blender through HSN, she was engaging in a direct transaction with Blendtec, as her purchase came with Blendtec's horsepower representations and warranties. *Id.* Ms. Johnson further alleges that Blendtec is responsible for the advertising, marketing, trade dress, and packaging of its blenders, and that Blendtec manufactured, marketed, and sold the blenders that are the subject of Ms. Johnson's individual and putative class claims during the class period. *Id.* ¶ 7. In addition to Ms. Johnson's Designer 650 Blendtec blender, the class claim includes all Blendtec blenders that purport to have 3.0 and 3.8 peak HP capacities. *Id.* ¶ 8.

Ms. Johnson alleges that, prior to purchasing her Blendtec blender, she reviewed the blender's labeling and packaging and saw that Blendtec marketed the blender as having a horsepower rating of "3.0 Peak HP." *Id.* ¶ 6. Ms. Johnson alleges that she relied on this labeling and packaging in selecting her blender over similar models and understood the labeling and packaging as representations and warranties of what her blender would be capable of during

normal use. *Id.* However, testing by a third-party laboratory specializing in electrical appliances, with whom Blendtec collaborated prior to the sale of its blenders, revealed that Blendtec's claims of 3.0 peak HP and 3.8 peak HP are impossible to achieve in one's home. *Id.* ¶ 3. The laboratory found that, in a blender claiming 3.0 peak HP, the maximum possible electrical power input is 1560 watts, which can only yield 2.09 horsepower, provided the electrical power is perfectly converted. *Id.* Similarly, in a blender claiming 3.8 peak HP, the maximum possible electrical power input is 1800 watts, which can only yield 2.41 horsepower. *Id.* This amounts to an actual horsepower yield that is 30.2% and 36.5% lower than what is advertised, respectively. *Id.* Moreover, standard American household three-prong wall outlets are only rated for a maximum of 1800 watts, and the three-prong plugs on Blendtec blenders are not rated for more than 0.5 horsepower. *Id.* Thus, Ms. Johnson alleges that Blendtec's horsepower claims are "unobtainable, under any conditions." *Id.* Had she known that her blender was not capable of its advertised horsepower capacity, Ms. Johnson alleges that she would not have purchased the product or would have purchased a competitor's blender. *Id.* ¶ 6.

Ms. Johnson filed this action on August 1, 2019. Blendtec filed the pending motion on September 13, 2019. ECF No. 19. The court addresses Blendtec's Motion to Dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

## LEGAL STANDARD

Dismissal of a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure is appropriate where the plaintiff fails to "state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). When considering a motion to dismiss for failure to state a claim, a court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the plaintiff." *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013) (citation omitted). "To survive a motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). The complaint must allege more than labels or legal conclusion and its factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## ANALYSIS

Blendtec has moved to dismiss Ms. Johnson's Class Action Complaint (the "Complaint") on six grounds. First, Blendtec argues that Ms. Johnson's class action claims do not meet the requirements of the Utah Consumer Sales Practices Act ("UCSPA") and that Ms. Johnson's state law-based claims are preempted by the UCSPA and are therefore barred. Second, Blendtec argues that Ms. Johnson's fraud-based claims are inadequately pleaded under the particularity requirements of Federal Rule of Civil Procedure 9(b). Third, Blendtec argues that Ms. Johnson's breach of warranty claims fail because she did not give Blendtec timely notice of the alleged breach. Fourth, Blendtec argues that Ms. Johnson's unjust enrichment claim fails because she did not plead that damages are an inadequate remedy and that a benefit was conferred upon Blendtec. Fifth, Blendtec argues that Ms. Johnson's claims under the Virginia Consumer Protection Act ("VCPA") should be dismissed under conflict of laws principles. Sixth, Blendtec argues that this court should dismiss all of Ms. Johnson's claims because a reasonable consumer would not be misled by Blendtec's horsepower representations. The court will address each of these arguments in turn, but will begin with the conflict of law issue.

## I.      Conflict of Law

It is well established that a federal court sitting in diversity applies the choice of law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941) ("We are of opinion that the prohibition declared in *Erie Railroad v. Tompkins*, 304 U.S. 64 [(1938)], . . . against such independent determinations by the federal courts [regarding the applicable law] extends to

the field of conflict of laws."). "In Utah, the courts first determine whether a conflict of law exists." *Anapoell v. Am. Express Bus. Fin. Corp.*, No. 7-CV-198, 2007 WL 4270548, at *11 (D. Utah Nov. 30, 2007) (citations omitted). There is a conflict of law if "the outcome would differ depending on which state's law is applied or if the forum state does not recognize the cause of action asserted in the complaint." *Id.* (citations omitted).

When there is a conflict, "[t]he Utah Supreme Court has adopted the 'most significant relationship approach,' as articulated in the Restatement (Second) Conflict of Laws." *Roberts v. C.R. England, Inc.*, 318 F.R.D. 457, 492 (D. Utah 2017) (quoting *Waddoups v. Amalgamated Sugar Co.*, 54 P.3d 1054, 1059 (Utah 2002)). For torts and causes of action akin to tort, "Utah courts traditionally apply factors contained in Section 145 of the Restatement," which include the following: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." *See id.* at 492–93. Finally, "[w]hen resolving conflicts, courts often also consider the general choice of law factors articulated in Section 6 of the Restatement":

> (a) the needs of the interstate and international systems,
> (b) the relevant policies of the forum,
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
> (d) the protection of justified expectations,
> (e) the basic policies underlying the particular field of law,
> (f) certainty, predictability and uniformity of result, and
> (g) ease in the determination and application of the law to be applied.

*Id.* at 494.

Blendtec argues that, under a choice of law analysis, Utah law and the UCSPA apply, and thus Ms. Johnson's claim under the VCPA should be dismissed. Ms. Johnson argues that a choice

of law analysis is premature at the motion to dismiss stage and that she is pleading her claims under Virginia law in the alternative.

A.  Evaluating Choice of Law upon a Motion to Dismiss

Blendtec argues that Ms. Johnson's VCPA claim should be dismissed based on a conflict of law analysis. The court agrees.

Blendtec primarily relies on *Anapoell* to support its argument. In *Anapoell*, a plaintiff asserted claims under both Utah's and California's unfair practices statute. 2007 WL 4270548, at *1. The court first determined that there was a conflict between the Utah and California laws "because the California statute is much broader and there is no equivalent statute in Utah." *Id.* at *11. Upon performing the choice of law analysis set out above, the court held that Utah law applied. *Id.* at *13. Although the injury in the case occurred in California, the court held that "the nature of the injury (monetary) and the nature of the claims (e.g., unfair competition, fraudulent misrepresentation)" meant that "the place of the alleged conduct carrie[d] more weight." *Id.* at *12. The place of the alleged conduct (the signing of a lease) was Utah. *Id.* This, along with other factors, established that Utah had the most significant relationship, and thus Utah law applied. *Id.* at *13. Accordingly, the court held that the plaintiff could not "have it both ways," and dismissed the California cause of action. *Id.*

Just as there was a conflict in laws in *Anapoell*, there is a conflict here. The VCPA and the UCSPA are in conflict because the VCPA is broader than the UCSPA; the UCSPA has limitations and requirements that the VCPA does not have. The VCPA and the UCSPA also are in conflict because they offer different remedies; the VCPA allows for treble damages for willful conduct, while the UCSPA does not.

Having found a conflict, the court turns to the choice of law analysis. Blendtec argues that the applicable factors weigh heavily in favor of applying Utah law. Citing directly to Ms. Johnson's Complaint, Blendtec avers the following:

- Defendants designed and manufactured the Blenders in Utah;
- Defendants' nationwide sales operations are controlled, directed and originate from Utah;
- Defendants' marketing, executive, and manufacturing operations, including the decisions regarding how to advertise, promote, and sell the Blenders, are made in Utah, and internal marketing personnel and external marketing consultants all are based there;
- Defendants' telephone sales force, customer service, Internet website, advertising operations, and distribution are controlled, directed, and originate in Utah;
- Defendants' principal place of business is in Utah;
- Defendants are incorporated in Utah;
- All significant employees of Defendants are based in Utah;
- Internet sales of the Blenders are placed, fulfilled, and carried out in Utah; and
- The facts and circumstances of this case include such numerous contacts with the State of Utah as to create a state interest in applying Utah's consumer laws to Defendants, making application of Utah law to the entire Class appropriate.

ECF No. 19 at 28 (citing ECF No. 2 ¶ 85). Although Ms. Johnson ordered and received her Blendtec blender in Virginia, Blendtec argues that the fraud-based nature of her claim requires that the place of the alleged conduct be given more weight in a choice of laws analysis. And Blendtec's designing, manufacturing, sales operations, marketing operations, executive operations, principal place of business, state of incorporation, significant employees, and fulfillment of internet sales all take place in Utah. Thus, Blendtec argues that Utah has an interest in applying the UCSPA rather than the VCPA.

Citing to case law from other circuits, Ms. Johnson counters that a choice of law analysis is premature at the motion to dismiss stage. The court disagrees. As set out above, Ms. Johnson's Complaint alleges sufficient facts to make a choice of law determination at this stage. And the

court in *Anapoell* performed a conflict of law analysis at the motion to dismiss stage. 2007 WL 4270548, at *10–13. This court thus finds support for doing the same here and finds that Utah law applies.

B.  Stating Claims Under the VCPA in the Alternative

Ms. Johnson also argues that her VCPA claim should endure as a claim made in the alternative, as authorized by Federal Rule of Civil Procedure 8(d)(2). In her Complaint, Ms. Johnson alleges claims arising under Virginia law on behalf of herself and a putative Virginia subclass. Ms. Johnson also alleges causes of action arising under Utah law.

The court is unpersuaded by this theory of pleading in the alternative for two reasons. First, just as the court in *Anapoell* found, Ms. Johnson "cannot have it both ways." 2007 WL 4270548, at *13. Pleading a claim under the VCPA in the alternative to her claim under the UCSPA does not allow Ms. Johnson "to escape dismissal once a motion to dismiss has been filed," *id.* at *13 n.20, and once the court has determined that Utah law and the UCSPA apply to this dispute. Second, Ms. Johnson may not evade the UCSPA's substantive restrictions on class actions for damages by relying on a procedural rule that permits pleading in the alternative.

Thus, based on conflict of law principles, the court finds that the UCSPA and Utah common law govern Ms. Johnson's claims. The court therefore grants Blendtec's motion to dismiss Ms. Johnson's claims under the VCPA and Virginia common law. The remainder of the analysis in this Order will thus proceed under the UCSPA and Utah common law.

## II.   Class Claims Under the UCSPA

In her Complaint, Ms. Johnson seeks, on behalf of herself and the putative class, declaratory relief, damages, prejudgment interest on all amounts awarded, restitution and equitable relief, injunctive relief, and attorneys' fees and costs. Blendtec argues that Ms. Johnson's Complaint should be dismissed for failure to state a claim because it fails to meet the UCSPA's

requirements for a class claim for money damages. But neither Blendtec nor Ms. Johnson addresses Ms. Johnson's claims for declaratory relief, injunctive relief, or attorney's fees and costs.

A.  UCSPA Elements

Under the UCSPA, "[a] deceptive act or practice by a supplier in connection with a consumer transaction" is unlawful. Utah Code § 13-11-4(1). "[A] supplier commits a deceptive act or practice if the supplier knowingly or intentionally indicates that the subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not." *Id.* § 13-11-4(2)(b).

Here, Ms. Johnsons alleges that Blendtec has engaged in a deceptive act by advertising the horsepower capacities of its blenders in substantial excess of the horsepower under which the blenders are actually capable of operating, thereby violating the UCSPA. The court finds that Blendtec's alleged conduct is subject to the UCSPA.

1)  Additional Elements for Class Claims Seeking Money Damages

In her Complaint, Ms. Johnson alleges, on behalf of herself and putative class members, a class claim for money damages. Ms. Johnson alleges her class claim for damages under section 13-11-19(4)(a) of the UCSPA. Section 13-11-19(4)(a) provides that consumer class actions for money damages are only cognizable if the consumer's damages were caused by one of the following actions:

> an act or practice specified as violating this chapter by a rule adopted by the enforcing authority under Subsection 13-11-8(2) before the consumer transactions on which the action is based, or declared to violate Section 13-11-4 or 13-11-5 by a final judgment of the appropriate court or courts of general jurisdiction and appellate courts of this state that was either officially reported or made available for public dissemination under Subsection 13-11-7(1)(c) by the enforcing authority 10 days before the consumer transactions on which the action is based, or with respect to a supplier who agreed to it, was prohibited specifically by the terms of a consent judgment which became final before the consumer transactions on which the action is based.

UTAH CODE § 13-11-19(4)(a). In short, class actions seeking money damages are available only when a supplier's actions violate an existing administrative rule, court order, or consent decree.

Ms. Johnson alleges that her damages were caused by Blendtec's violation of an administrative rule and therefore fall within section 13-11-19(4)(a). Ms. Johnson cites Utah Administrative Code R152-11-3 as the violated rule. This rule, which is titled "Bait Advertising/Unavailability of Goods," provides in relevant part:

> B. It shall be a deceptive act or practice in connection with a consumer transaction for a supplier to offer to sell consumer commodities when the offer is not a bona fide effort to sell the advertised consumer commodities. An offer is not bona fide if:
>
>> (1) A supplier uses a statement or illustration in any advertisement which would create in the mind of a reasonable consumer a false impression of the grade, quality, quantity, make, value, model, year, size, color, usability, or origin of the consumer commodities offered or which otherwise misrepresents the consumer commodities in such a manner that, on subsequent disclosure or discovery of the true facts, the consumer is diverted from the advertised consumer commodities to other consumer commodities. An offer is not bona fide, even though the true facts are made known to the consumer before he views the advertised consumer commodities, if the first contact or interview is secured by deception.

UTAH ADMIN. CODE R152-11-3(B)(1).

### 2)  Applicability of R152-11-3

Blendtec argues this administrative rule does not apply to the facts of this case because Ms. Johnson's claim is rooted in fraud rather than in the bait and switch transactions to which this administrative rule is directed. Blendtec primarily relies on *Callegari v. Blendtec, Inc.*, No. 18-CV-308, 2018 WL 5808805 (D. Utah Nov. 6, 2018), a case presenting claims almost identical to those at issue here. In *Callegari*, a consumer purchased a Blendtec blender in reliance on Blendtec's horsepower representations. *Id.* at *1. Upon discovering that the blender was "under-powered as compared to the horsepower claims made by Blendtec," the consumer brought an individual and putative class claim under UCSPA section 13-11-19(4)(a) and Utah Administrative

Code R152-11-3. *Id.* at *2. The district court in *Callegari* held that the consumer's class claim under these provisions failed because the "[p]laintiff did not allege that he was diverted from the product advertised by Blendtec to some other product. He only stated that he would not have purchased the product, or would have paid less for it, had he known that the blender was not as powerful as advertised." *Id.* at *3. Finding R152-11-3 to be inapplicable to the facts of the case, the court reasoned:

> R152-11-3 is a prohibition against bait and switch advertising tactics. It is labeled as such, and it requires that a consumer be "diverted from the advertised consumer commodities to other consumer commodities" for a seller's conduct to violate the rule. Plaintiff did not allege bait and switch tactics in his Complaint, nor does he provide any additional facts in his briefing to show that a bait and switch occurred. Plaintiff alleged false advertising, which he believes caused damages to a class of consumers. But the facts alleged by Plaintiff do not constitute the bait and switch advertising tactics prohibited by R152-11-3.

*Id.* Because the plaintiff failed to allege bait and switch advertising tactics, and instead made allegations grounded in fraud, the court held that "[p]laintiff has not met the requirements for pleading a class action for damages under the UCSPA." *Id.* Given the factual similarities between *Callegari* and this case, Blendtec argues that Ms. Johnson's claim should similarly fail.

Ms. Johnson counters that, irrespective of the administrative rule's title, the plain language of the rule embraces a claim grounded in fraud. She argues that the second "or" listed in R152-11-3(B)(1) should be interpreted as a disjunctive phrase that creates two independently sufficient clauses under which an offer is not bona fide and thus violates the administrative rule. That is, Ms. Johnson contends that, under R152-11-3(B)(1), an offer is not bona fide if the supplier *either*:

> uses a statement or illustration in any advertisement which would create in the mind of a reasonable consumer a false impression of the grade, quality, quantity, make, [or] value, . . . *or* which otherwise misrepresents the consumer commodities in such a manner that, on subsequent disclosure or discovery of the true facts, the consumer

> is diverted from the advertised consumer commodities to other consumer commodities.

UTAH ADMIN. CODE R152-11-3(B)(1) (emphasis added). Thus, Ms. Johnson contends that a bait and switch transaction is not necessary to come within the purview of this administrative rule. As to Blendtec's argument that the "Bait Advertising/Unavailability of Goods" title of the administrative rule should inform the interpretation of R152-11-3(B)(1), Ms. Johnson argues that such a position violates the "cardinal rule of statutory interpretation (and well known to Congress) that courts will not use legislative captions and titles to 'limit the plain meaning of [the statutory] text' Congress adopts." *United States v. Hernandez*, 655 F.3d 1193, 1197 (10th Cir. 2011) (quoting *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 212 (1998)). Ms. Johnson also contends that her disjunctive and textual interpretation of the statute comports with the UCSPA's stated purpose that the UCSPA "shall be construed liberally" to "protect consumers from suppliers who commit deceptive and unconscionable sales practices." UTAH CODE § 13-11-2(2). The court is not persuaded by Ms. Johnson's arguments.

### i.   *Callegari v. Blendtec, Inc.*

Like the plaintiff in *Callegari*, Ms. Johnson asserts her claim for damages under section 13-11-19(4)(a) and R152-11-3 based on Blendtec's allegedly false representations that its blenders have a certain horsepower capacity. Just as the *Callegari* consumer's claim failed under R152-11-3 because he "did not allege bait and switch tactics in his Complaint, nor [did] he provide any additional facts in his briefing to show that a bait and switch occurred," 2018 WL 5808805, at *3, Ms. Johnson's claim fails for the same reason. She too has failed to allege that Blendtec's advertising caused her to be diverted from an advertised product to another product. To the contrary, Ms. Johnson purchased the very blender that was the subject of the advertising on which she relied. In short, Ms. Johnson has failed to state a claim under section 13-11-19(4)(a) and

R152-11-3 because her allegations do not encompass the bait and switch advertising that R152-11-3 prohibits.[2]

ii.    Statutory Interpretation

This court agrees with the *Callegari* court's interpretation of R152-11-3. The objective of statutory interpretation "is to understand what the Legislature intended." *State v. Sanders*, 445 P.3d 453, 457 (Utah 2019) (citation omitted). The starting point for this inquiry is the statutory text. *Id.* In examining the text, the deciding court must "presume that the legislature used each word advisedly and read each term according to its ordinary and accepted meaning." *State v. Flora*, 459 P.3d 975, 980 (Utah 2020) (citation omitted). Thus, the deciding court must "construe statutory enactments in a way that 'render[s] all parts thereof relevant and meaningful,'" and "'avoid an interpretation which renders portions of, or words in, a statute superfluous or inoperative' or makes a statute 'unreasonably confused or inoperable.'" *Andreason v. Felsted*, 137 P.3d 1, 4 (Utah Ct. App. 2006) (citation omitted). To that end, "individual words and subsections [are not viewed in] isolation; instead, our statutory interpretation 'requires that each part or section be construed in connection with every other part or section so as to produce a harmonious whole.'" *Sanders*, 445 P.3d at 457 (citation omitted).

"When the '"meaning of [a] statute can be discerned from its language, no other interpretive tools are needed.'" *Marion Energy, Inc. v. KFJ Ranch P'ship*, 267 P.3d 863, 866 (Utah

---

[2] While Ms. Johnson attempts to distinguish *Callegari* on the basis that the plaintiff in that case did not reference R152-11-3 in his complaint and that the *Callegari* court's statutory analysis was too narrow, the court finds these arguments unpersuasive. First, the plaintiff in *Callegari* "assert[ed] that the rule . . . relevant [in his case] is found in the Utah Administrative Code R152-11-3." 2018 WL 5808805, at *2. Thus, even though the plaintiff failed to reference R152-11-3 in his complaint, he still asserted the rule as the basis of his cause of action. Second, the court finds the *Callegari* court's interpretation of R152-11-3 to be correct, as explained further in the following section.

2011) (alteration in original) (citations omitted). "But when statutory language is ambiguous—in that its terms remain susceptible to two or more reasonable interpretations after we have conducted a plain language analysis—we generally resort to other modes of statutory construction." *Id.* (citation omitted). "The title of a statute is not part of the text of a statute, and absent ambiguity, it is generally not used to determine a statute's intent." *Blaisdell v. Dentrix Dental Sys., Inc.*, 284 P.3d 616, 620 (Utah 2012) (citation omitted). Additionally, a statute should not be interpreted in accordance with its title if the title "is clearly narrower than the plain language of the statute." *Funk v. Utah State Tax Comm'n*, 839 P.2d 818, 820 (Utah 1992). "However [the title] is persuasive and can aid in ascertaining [the statute's] correct interpretation and application." *Blaisdell*, 284 P.3d at 620 (citation omitted).

Here, since neither the legislature nor any appellate court has interpreted R152-11-3, the court must begin with the text of the rule to determine whether it applies to the facts of this case. R152-11-3(B) provides that "[i]t shall be a deceptive act or practice in connection with a consumer transaction for a supplier to offer to sell consumer commodities when the offer is not a bona fide effort to sell the advertised consumer commodities." UTAH ADMIN. CODE R152-11-3(B). The rule then goes on to define the instances in which an offer is not bona fide:

> (1) A supplier uses a statement or illustration in any advertisement which would create in the mind of a reasonable consumer a false impression of the grade, quality, quantity, make, value, model, year, size, color, usability, or origin of the consumer commodities offered or which otherwise misrepresents the consumer commodities *in such a manner that, on subsequent disclosure or discovery of the true facts, the consumer is diverted from the advertised consumer commodities to other consumer commodities*. An offer is not bona fide, even though the true facts are made known to the consumer before he views the advertised consumer commodities, if the first contact or interview is secured by deception.

*Id.* at R152-11-3(B)(1) (emphasis added). The court interprets the rule to have two requirements. First, the supplier must misrepresent an advertised product. Second, the misrepresentations must

cause the consumer to purchase a product other than the product advertised. The language preceding the italicized text specifies the ways in which a supplier may make misrepresentations to a consumer. The italicized text requires that the supplier engage in its misrepresentations "in such a manner that, on subsequent disclosure or discovery of the true facts, the consumer is diverted from the advertised consumer commodities to other consumer commodities." A supplier's conduct does not violate the rule unless both requirements are satisfied. In short, the court reads the rule to require a bait and switch transaction in which the consumer is lured in by the supplier's representations to purchase one product, only to then ultimately be diverted to other products.

The rule as a whole further supports the court's interpretation and is not consistent with Ms. Johnson's argument that the rule extends to all claims of false or deceptive advertising. R152-11-3(B)'s description of a "deceptive act" indicates that a bait and switch transaction is one in which the supplier's offer is not a bona fide effort to sell what is advertised but rather to sell something else. UTAH ADMIN. CODE R152-11-3(B). Additionally, subsection (2) of R152-11-3(B) defines a non-bona fide offer as one in which "[a] supplier discourages the purchase of the advertised consumer commodities in order to sell other consumer commodities." *Id.* at R152-11-3(B)(2). And subsection (3) defines a non-bona fide offer as one in which "[a] supplier, in the event of a sale to the consumer of the offered consumer commodities, attempts to persuade a consumer to repudiate the purchase of the offered commodities and purchase other consumer commodities in their stead." *Id.* at R152-11-3(B)(3). Subsection (4) defines a non-bona fide offer as one in which "[a] supplier represents in any advertisement, which would create in the mind of the consumer, a false impression that the offer of goods has been occasioned by a financial or natural catastrophe when such is not true." *Id.* at R152-11-3(B)(4). Finally, subsection (5) defines a non-bona fide offer as one in which "[a] supplier misrepresents the former price, savings, quality

or ownership of any goods sold." *Id.* at R152-11-3(B)(5). All of these subsections describe a bait and switch offer in which the supplier makes misrepresentations about a product, only to divert the customer to another product. The court thus finds that R152-11-3(B) and R152-11-3(B)(1) unambiguously prohibit only bait and switch advertising and do not extend to mere misrepresentations by the supplier.

The rule's prohibition of bait and switch advertising is also consistent with its title. The rule is titled "Bait Advertising/Unavailability of Goods." The title does not contradict or limit the plain meaning of the rule, but is wholly consistent with the rule's text and the court's interpretation of the rule as prohibiting only bait and switch advertising.

Because Ms. Johnson has not alleged that she was subjected to bait and switch advertising, the court finds that she has not stated a claim that falls within the purview of the rule. As noted above, Blendtec sold and Ms. Johnson purchased the very blender that was advertised to her. Because there is no allegation of a bait and switch transaction, Ms. Johnson's cited administrative rule does not apply. And because Ms. Johnson fails to cite to any other administrative rule that would satisfy the UCSPA requirements for a class claim for damages, Ms. Johnson has failed to state such a claim under the UCSPA.

B.  Plaintiff's Request to Defer Ruling

As a final point, Ms. Johnson contends that whether the UCSPA bars her class action for damages should not be decided now, but deferred to a later stage of the proceedings. *See Sergeants Benevolent Ass'n Health & Welfare Fund v. Actavis, PLC*, No. 15 Civ. 6549 (CM), 2018 WL 7197233, at *52 (S.D.N.Y. Dec. 26, 2018) ("[T]his issue is more appropriately handled following discovery[.]"); *In re Gen. Motors LLC Ignition Switch Litig.*, 339 F. Supp. 3d 262, 332 n.63 (S.D.N.Y. 2018) ("The Court defers to another day whether the provision [that limits damages under the UCSPA] limits Plaintiff's relief here."); *In re Volkswagen "Clean Diesel" Mktg., Sales*

*Practices, & Prods. Liab. Litig.*, 349 F. Supp. 3d 881, 920 (N.D. Cal. 2018) ("The Court will not make these determinations at this stage.").

Although some courts have refrained from determining whether the requirements for a class action for damages have been satisfied at the motion to dismiss stage, Ms. Johnson's cited authority is not binding. Because the requirements of the UCSPA are clear and Ms. Johnson's allegations fail to satisfy them, the court finds it appropriate to decide the issue at this juncture. *See Callegari*, 2018 WL 5808805, at *3 (dismissing plaintiff's class action claim for damages under the UCSPA for failure to plead "'an act or practice specified as violating [the UCSPA] by a rule adopted by the enforcing authority'" (citation omitted)). Interpreting R152-11-3(B)(1) in the full context of R152-11-3(B) and its other subparts, and consistent with the *Callegari* court's interpretation of this rule, this court finds that Ms. Johnson has failed to state a class claim for damages under section 13-11-19(4)(a) and R152-11-3.

> C.  UCSPA Standard for Individual Claims and Class Claims for Declaratory and Injunctive Relief

The court's ruling that Ms. Johnson has failed to state a class claim for damages under the UCSPA does not resolve all of her claims. The court must still consider Ms. Johnson's class claims for injunctive and declaratory relief, as well as her individual claims for damages, injunctive relief, and declaratory relief. Section 13-11-19(1) of the UCSPA provides:

> Whether [a consumer] seeks or is entitled to damages or otherwise has an adequate remedy at law, a consumer may bring an action to: (a) obtain a declaratory judgment that an act or practice violates this chapter; and (b) enjoin, in accordance with the principles of equity, a supplier who has violated, is violating, or is likely to violate this chapter.

UTAH CODE § 13-11-19(1)(a)–(b). Additionally, section 13-11-19(2) of the UCSPA states that "[a] consumer who suffers loss as a result of a violation of this chapter may recover, but not in a class action, actual damages or $2,000, whichever is greater, plus court costs." *Id.* § 13-11-19(2). Finally,

section 13-11-19(3) provides that "[w]hether a consumer seeks or is entitled to recover damages or has an adequate remedy at law, he may bring a class action for declaratory judgment, an injunction, and appropriate ancillary relief against an act or practice that violates this chapter." *Id.* § 13-11-19(3).

Based on the foregoing provisions, the court finds that Ms. Johnson is not precluded from asserting a class claim for injunctive relief and declaratory relief, as such claims are not subject to the limitations of class claims for damages set out in section 13-11-19(4)(a) and analyzed above. Additionally, the court finds that Ms. Johnson is not precluded from pursuing her own individual claims for damages, declaratory relief, and injunctive relief. The court's subsequent analysis of Ms. Johnson's common law claims for damages will thus proceed on the premise that they are now being asserted on an individual, rather than class, basis.

### III.    UCSPA Preemption of State Law Class Claims

Blendtec argues that the UCSPA pre-empts all common law claims relating to the transactions covered by its terms. Accordingly, it maintains that all of Ms. Johnson's non-UCSPA class claims must also be dismissed. Blendtec relies on UCSPA section 13-11-23, which is titled "Other remedies available—Class action only as prescribed by act." It provides that "[t]he remedies of this act are in addition to remedies otherwise available for the same conduct under state or local law, *except* that a class action relating to a transaction governed by this act may be brought *only* as prescribed by this act." UTAH CODE § 13-11-23 (emphasis added). According to Blendtec, this provision means that, when the UCSPA applies, it is the exclusive remedy available to a class of consumers, and thereby preempts any other associated class claims based on state law.

Ms. Johnson argues that Blendtec's position is unsupported by case law or other authority and that the Federal Rules of Civil Procedure entitle her to plead in the alternative. Ms. Johnson cites to Rule 8(d)(2), which provides that "[a] party may set out 2 or more statements of a claim

18

or defense alternatively or hypothetically," and to Rule 8(a)(3), which provides that a pleading stating a claim for relief must contain "a demand for the relief sought, which may include relief in the alternative or different types of relief." Fed. R. Civ. P. 8(d)(2), 8(a)(3).

The issue of whether the UCSPA preempts other state law class claims appears to be one of first impression.[3] Employing the same rules of statutory interpretation set out above, the court looks to the plain language of section 13-11-23 to determine whether it has this preemptive effect. The text of section 13-11-23 unequivocally provides that the UCSPA is the *only* class remedy available for transactions that fall within its ambit. Because Ms. Johnson's class claim for damages fails under the UCSPA, Ms. Johnson cannot pursue a class claim for damages under the common law.

Ms. Johnson cites to Rules 8(d)(2) and 8(a)(3) of the Federal Rules of Civil Procedure, arguing that she is permitted to plead in the alternative. But these procedural rules do not give rise to substantive claims. Rather, they assume the existence of a valid underlying substantive claim. Because the UCSPA sets out clear, substantive limits on a consumer's ability to seek a class remedy for damages, a plaintiff cannot use a procedural rule to subvert this substantive law.[4] However,

---

[3] The *Callegari* court held that plaintiff failed to state a class claim for damages under the UCSPA and then went on to consider the plaintiff's state law claims on the merits, 2018 WL 5808805, at *4–6. But the issue of whether the UCSPA preempted common law class claims was not raised or considered in the case.

[4] Although Ms. Johnson avers that the court should interpret the UCSPA's limitations on class claims for damages "liberally," in line with the UCSPA's stated purpose to "protect consumers from suppliers who commit deceptive and unconscionable sales practices," Utah Code § 13-11-2(2), this broad statement of purpose cannot contravene the unambiguous preemptive language of the rule. Although written in the context of evaluating a similar provision of the Utah Trade Secrets Act ("UTSA"), the court finds the holding in *CDC Restoration & Constr., LC v. Tradesmen Contractors, LLC*, 274 P.3d 317 (Utah Ct. App. 2012), to be instructive. In *CDC Restoration*, a plaintiff's common law claims were preempted because of the plaintiff's failure to state a claim under the UTSA. *Id.* at 331. The court so held even though the "plaintiff may be left unable to prove trade secret status under the UTSA, yet barred by it from proceeding on any other theory," because "[a] contrary approach "'would render the statutory preemption provision

because the UCSPA does not restrict class claims for injunctive or declaratory relief, or individual claims for damages, injunctive relief, or declaratory relief, Ms. Johnson is not barred by the UCSPA from pursuing these claims for relief.

In sum, the court finds that Ms. Johnson has failed to state a class claim for damages under the UCSPA and accordingly dismisses her UCSPA class claim for damages. Because the UCSPA preempts other state law class claims for damages, the court also dismisses Ms. Johnson's other state law-based class claims for damages. However, the UCSPA does not bar her class claims for injunctive and/or declaratory relief or her individual claims for damages, injunctive, and/or declaratory relief. Therefore, the court now turns to Ms. Johnson's other state law claims for damages as they pertain to her as an individual.

## IV.   Rule 9(b) Requirement to Plead Fraud with Particularity

Federal Rule of Civil Procedure 9(b) requires that a party alleging fraud or mistake "must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). Where claims under the UCSPA "arise[] out of allegations of deception, false misrepresentations and omissions," they must meet the Rule 9(b) requirements. *Jackson v. Philip Morris Inc.*, 46 F. Supp. 2d 1217, 1222 (D. Utah 1998). "At a minimum, Rule 9(b) requires that a plaintiff set forth the 'who, what, when, where and how' of the alleged fraud, and must set forth the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Callegari*, 2018 WL 5808805, at *5 (citation omitted). The court considers the factual allegations levied against the defendants to determine whether Ms. Johnson has satisfied the requirements of Rule 9(b).

---

effectively meaningless,'" leaving prior law untouched and converting an exclusive remedy into "'just another basis for recovery.'"" *Id.* at 330 (citations omitted).

Taking the allegations in Ms. Johnson's Complaint as true, the court finds that Ms. Johnson sufficiently pleaded facts that establish the "who, what, when, where and how" of the alleged fraud, as well the "time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof." Ms. Johnson alleges that she purchased Blendtec's Designer 650 model blender from HSN's website while in Virginia in September 2018. She alleges that she purchased the blender with the understanding and belief that HSN was acting with the permission of or through Blendtec. She alleges that she purchased her blender in reliance on the advertised horsepower rating of the blender, which she alleges was featured on the product's packaging and labeling, as well as on Blendtec's website. She included images of Blendtec's website and HP advertisements in her Complaint. These images included her blender—the Designer 650—with an accompanying advertisement of 3.0 horsepower. Ms. Johnson also alleges that the horsepower advertised for her blender was fraudulent, as her blender performed nowhere near the advertised 3.0 horsepower capacity. Ms. Johnson alleges that she would not have purchased the blender or would have purchased a competitor's product had she been aware of the true horsepower capacity of her blender.

Based on these allegations, the court finds that Ms. Johnson has sufficiently pleaded the "who" (Blendtec, both directly through its website and through HSN as a third party seller); "what" (Ms. Johnson purchased her Blendtec Designer 650 blender and found that it did not perform as advertised); "when" (September 2018); "where" (Ms. Johnson purchased the blender online from HSN's website, while she was in Virginia); and "how" (Ms. Johnson viewed and relied upon the horsepower representations of her particular blender, as substantiated by advertising photos of her particular blender, and would not have purchased the blender or would have purchased a competitor's blender had she known that her blender would not perform as promised). These

allegations also establish the time, place, and contents of the alleged fraudulent representations, as well as who made them and the consequences thereof.

Accordingly, the court finds these allegations sufficient to meet the Rule 9(b) requirements. Dismissing Ms. Johnson's individual fraud claims under Rule 9(b) would thus be improper. *Contra Callegari*, 2018 WL 5808805, at *5 (dismissing UCSPA claim under Rule 9(b) for failure to identify the particular website on which the consumer purchased his blender, identify where he observed the allegedly false statements beyond stating that such statements were present on "each and every" blender package, allege specific misrepresentations made about the particular blender model he purchased, and specify the dates and times of the allegedly misleading statements); *Singer v. Am. Express Centurion Bank*, No. 17-CV-2507, 2018 WL 2138626, at *5 (S.D.N.Y. May 9, 2018) (dismissing plaintiff's UCSPA class action claim[5] for damages Rule 9(b) for failure to plead more than "conclusory" allegations).

## V.     Timely Notice for Breach of Warranty Claims

Blendtec also moves to dismiss Ms. Johnson's claims for breach of warranty, alleging that she failed to timely notify Blendtec of the alleged breach. Under section 70A-2-607(3)(a) of the Utah Uniform Commercial Code, a buyer asserting a claim for breach of warranty "must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." UTAH CODE § 70A-2-607(3)(a). Pursuant to comment 4 of the same section, "'[a] reasonable time' for notification from a retail consumer is to be judged by different standards [than those for a merchant buyer] so that in [the retail consumer's] case it will be extended, for the rule of requiring notification is designed to defeat commercial bad faith, not

---

[5] As previously established, since the court finds that Ms. Johnson's class claim for damages fails under the UCSPA, and since the court finds that the UCSPA preempts state law permitting class claims for damages, the court analyzes only Ms. Johnson's individual claims of fraud.

to deprive a good faith consumer of his remedy." *Id.* at cmt. 4. "What constitutes 'a reasonable time' [under section 70A-2-607(3)(a)] is usually a question of fact to be determined from the circumstances of each case." *Christopher v. Larson Ford Sales, Inc.*, 557 P.2d 1009, 1012 (Utah 1976) (citation omitted). Comment 4 further provides that "[t]he content of the notification need merely be sufficient to let the seller know that the transaction is still troublesome and must be watched," and that there is no requirement that the notice the buyer provides "must include a clear statement of all objections that will be relied on by the buyer." UTAH CODE § 70A-2-607(3)(a) cmt. 4. "Section 70A-2-607 places an affirmative burden on a would-be plaintiff prior to his filing suit, rather than merely requiring that a defendant be put on notice of a breach." *Callegari*, 2018 WL 5808805, at *6.

Blendtec argues that Ms. Johnson failed to meet this standard, as her Complaint merely alleges that "Blendtec has been provided proper pre-suit notice," ECF No. 2 ¶ 99, with no supporting facts or evidence. Moreover, Blendtec argues that the length of time between when Ms. Johnson discovered or should have discovered the defect and when she provided Blendtec with notice was unreasonable. In support, she cites cases holding that delays of nine months, *Necho Coal Co. v. Denise Coal Co.*, 128 A.2d 771, 773 (Pa. 1957), and thirty-two months, *Mawhinney v. Jensen*, 232 P.2d 769, 776 (Utah 1951), between purchase and notice were unreasonable as a matter of law. Blendtec argues that Ms. Johnson "should have *immediately known*" that the Blendtec blender she purchased did not "put out the 3.0 horsepower so critical to her purchase decision."[6]

---

[6] Both parties also argued in briefing and at oral argument about whether Ms. Johnson properly provided notice under section 70A-2-607(3)(a) on behalf of the other putative class members. Because the court has dismissed all of Ms. Johnson's class claims for damages, including her claims for breach of warranty, the court does not reach the issue of whether Ms. Johnson's notice on behalf of the putative class members was sufficient under 70A-2-607(3)(a).

Ms. Johnson counters that she did provide Blendtec with proper pre-suit notice in the form of a pre-suit notice letter mailed on July 17, 2019 (received on July 24, 2019), less than one month after she learned of Blendtec's alleged breach. She attached a copy of this letter to her response memorandum. Ms. Johnson further argues that her notice was timely, as she provided it promptly upon discovering the alleged breach, and it would be unreasonable to expect her to discover the alleged breach through mere use of the blender alone.

The court finds that Ms. Johnson has sufficiently alleged compliance with the notice requirements of section 70A-2-607(3)(a) with respect to her individual claims. In determining the sufficiency of a complaint, a court may consider "documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) (citation omitted). Because Ms. Johnson's pre-suit notice letter is central to the issue of notice, and its authenticity is not disputed, the court will consider it. The pre-suit notice letter referenced section 70A-2-607(3)(a), specifically put Blendtec on notice of Ms. Johnson's lawsuit regarding the advertised horsepower capabilities of its blenders if corrective action was not taken, and was sent by Ms. Johnson's retained counsel. Thus, Ms. Johnson as "the buyer" provided notice through her counsel. The court therefore finds that the content of the notice is sufficient under section 70A-2-607(3)(a).

As to whether the timing of the notice was reasonable under section 70A-2-607(3)(a), the court takes note of comment 4 to this statute, which provides that a retail consumer should be judged by more lenient standards than a merchant consumer in determining whether notice was timely.[7] Ms. Johnson argues that she provided notice to Blendtec within one month of discovering

---

[7] Blendtec cites to *Necho Coal* and *Mawhinney* to assert that a nine-month and thirty-two-month delay between discovery and notice, respectively, is untimely as a matter of law. However, the plaintiffs in these cases were sophisticated merchants, *see Necho Coal*, 128 A.2d at 772–73

the breach. *Contra Callegari*, 2018 WL 5808805, at *6 (dismissing claim of breach of warranties because "Plaintiff has not alleged that he gave Defendant notice of the alleged breach of express or implied warranty"). While Blendtec asserts that Ms. Johnson should have been immediately aware of the breach, it provides no authority to support this assertion. What constitutes a "reasonable time" under section 70A-2-607(3)(a) is typically an issue of fact to be decided by the fact finder. Given the lenient standard applicable to the timing of notice by retail consumers, the court cannot find as a matter of law that Ms. Johnson's notice was untimely. Thus, the court will not dismiss Ms. Johnson's individual breach of warranty claims for untimely notice.

## VI.    Unjust Enrichment

Blendtec argues that Ms. Johnson's unjust enrichment claim should be dismissed for two reasons: first, Ms. Johnson did not plead that an adequate legal remedy was unavailable to her; and second, Ms. Johnson did not plead that Blendec received a direct benefit from Ms. Johnson's purchase of her blender from HSN, a third party retailer. Ms. Johnson argues that she is able to plead a claim of unjust enrichment as an alternative to her breach of contract claim, and that she pleaded sufficient facts to establish that a benefit was conferred upon Blendtec as a result of her purchase from HSN.

### A.  Failure to Plead an Inadequate Legal Remedy

Under Utah law, to state a claim of unjust enrichment, a plaintiff must plead the following: (1) "a benefit conferred on one person by another," (2) "the conferee must appreciate or have knowledge of the benefit," and (3) "the acceptance or retention by the conferee of the benefit under such circumstances as to make it inequitable for the conferee to retain the benefit without payment

---

(plaintiff is a coal company); *Mawhinney*, 232 P.2d at 776 (plaintiffs are hotel owners), rather than retail consumers like Ms. Johnson, and so they are entitled to less leniency under section 70A-2-607(3)(a).

of its value." *Desert Miriah, Inc. v. B&L Auto, Inc.*, 12 P.3d 580, 582 (Utah 2000) (citation omitted). Because unjust enrichment is meant to provide a remedy where one is unavailable at law, "if a legal remedy is available, such as breach of an express contract, the law will not imply the equitable remedy of unjust enrichment." *Am. Towers Owners Ass'n, Inc. v. CCI Mech., Inc.*, 930 P.2d 1182, 1193 (Utah 1996) (citations omitted), *abrogated on other grounds by Davencourt at Pilgrims Landing Homeowners Ass'n v. Davencourt at Pilgrims Landing, LC*, 221 P.3d 234 (Utah 2009). However, proof of "the absence of an adequate remedy at law is *not* an element of the *prima facie* case for unjust enrichment under the law[] of . . . Utah." *In re Processed Egg Prods. Antitrust Litig.*, 851 F. Supp. 2d 867, 917 (E.D. Pa. 2012) (citation omitted) (interpreting Utah law). Thus, Blendtec's argument that Ms. Johnson's claim of unjust enrichment should be dismissed for failure to allege a lack of an adequate legal remedy fails.

### B.  Failure to Plead a Direct Benefit to Supplier

Blendtec next argues that Ms. Johnson's claim for unjust enrichment fails because she has failed to plead that her blender purchase conferred the requisite benefit on Blendtec. While "Utah requires a direct benefit" in order to state a valid claim of unjust enrichment, the relevant distinction is not between a direct and indirect benefit, but rather "between a direct and <u>incidental</u>" benefit. *In re Packaged Seafood Prods. Antitrust Litig.*, 242 F. Supp. 3d 1033, 1092 (S.D. Cal. 2017) (citing *Concrete Prod. Co. v. Salt Lake County*, 734 P.2d 910, 911–12 (Utah 1987)) (evaluating the validity of a plaintiff's unjust enrichment claim under Utah law alleged with a UCSPA claim). Indeed, "the lack of direct contact" between indirect purchaser plaintiffs and a distributor does not "doom[] [an] unjust enrichment claim[]." *In re Auto. Parts Antitrust Litig.*, 50 F. Supp. 3d 836, 864 (E.D. Mich. 2014) (evaluating the validity of a plaintiff's unjust enrichment claim under Utah law); *see also In re Generic Pharm. Pricing Antitrust Litig.*, 368 F. Supp. 3d 814, 851 (E.D. Pa. 2019) (evaluating the validity of a plaintiff's unjust enrichment claim under Utah

law and finding that "[t]he mere fact that there has been no direct contact between a defendant and the plaintiff does not preclude a finding that the defendant received a direct benefit from that plaintiff" (citation omitted)). The "critical inquiry [i]s not whether the benefit is conferred directly on the defendant, but whether the plaintiff can establish [that] the relationship between his detriment and the defendant's benefit 'flow[s] from the challenged conduct.'" *In re Automotive Parts*, 50 F. Supp. 3d at 864 (citation omitted). Moreover, "[u]njust enrichment must remain a flexible and workable doctrine," and so the trial court has "broad discretion . . . in its application of unjust enrichment law to the facts." *Rawlings v. Rawlings*, 240 P.3d 754, 761 (Utah 2010) (citation omitted).

Blendtec primarily relies on *Spence v. Basic Research*, No. 16-CV-925, 2017 WL 2416913 (D. Utah June 2, 2017) to argue that Ms. Johnson has failed to adequately allege that her blender purchase conferred a benefit on Blendtec. But *Spence* is distinguishable. In *Spence*, the court granted a motion to dismiss on an unjust enrichment claim because the purchaser "ha[d] not pled any facts about the relationship between [a third party seller] and the Defendants upon which the court [could] rely in concluding that the money from retail sales ultimately returned to Defendants." 2017 WL 2416913, at *5. Rather, the purchaser in *Spence* simply alleged the product she purchased, the date on which she purchased it, the amount paid, and the third party seller from which she purchased it; no mention was made of the defendant at all. *Id.* In contrast, Ms. Johnson alleges that she "understood that in making the sale, her retailer was acting with the knowledge and approval of the Defendants and/or as the agent of the Defendants." Ms. Johnson also alleges that she "understood that the purchase involved a direct transaction between herself and Defendants, because the purchase came with Defendants' representations and warranties that her Blendtec Blender produced 3.0 horsepower." While Ms. Johnson's allegations are not specific as

to exactly how the benefit of her purchase reached Blendtec, her allegations are more specific than those of the plaintiff in *Spence* and thus do not "doom" her unjust enrichment claim at this juncture. Ms. Johnson's allegations regarding the relationship between HSN and Blendtec are sufficient to satisfy the pleading requirement that "the relationship between [her] detriment and the defendant's benefit flow[s] from" Blendtec's alleged fraudulent advertising. Thus, the court denies Blendtec's motion to dismiss as to Ms. Johnson's individual claim of unjust enrichment.

### C.  Pleading Unjust Enrichment in the Alternative

It is a "general principle that a party may plead claims in the alternative, even if the claims appear to be facially contradictory." *Gulf Coast Shippers Ltd. P'ship v. DHL Express (USA), Inc.*, No. 9-CV-221, 2015 WL 4557573, at *19 (D. Utah July 28, 2015); *see also* FED. R. CIV. P. 8(d)(2). Thus, a claim for unjust enrichment can be pleaded in the alternative to a claim for damages at law, even if not expressly labeled by the plaintiff as an alternative theory. *Gulf Coast Shippers*, 2015 WL 4557573, at *19. Further, a plaintiff "may reference factual allegations that support both a breach of contract and equitable claims." *Id.* (denying defendant's motion to dismiss for failure to expressly plead a claim of unjust enrichment, deeming the argument "overly technical," "unpersuasive," and unsupported by "any binding precedent"). Additionally, "[b]ecause a claim should be dismissed only if it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of the claim, a district court should not dismiss alternative equitable claims if the existence or applicability of a contract remain in dispute." *AGTC, Inc. v. CoBon Energy LLC*, 447 P.3d 123, 130 (Utah Ct. App. 2019) (reversing a district court's dismissal of an unjust enrichment claim when "questions regarding the validity of the contract remained unresolved"), *cert. denied*, 456 P.3d 388 (Utah 2019); *see also MP Nexlevel, LLC v. Codale Elec. Supply, Inc.*, No. 8-CV-727, 2010 WL 1687985, at *5 (D. Utah Apr. 23, 2010) (denying a motion for summary judgment for an unjust enrichment claim even though there was

an available legal remedy because the validity of the contract was not yet known); *Parrish v. Volkswagen Grp. of Am., Inc.*, No. CV 19-1148, 2020 WL 4529615, at \*17 (C.D. Cal. May 7, 2020) (denying a motion to dismiss an unjust enrichment claim regardless of the availability of a legal remedy because "the Court will permit Plaintiffs to plead an unjust enrichment claim in the alternative to their other claims" (citation omitted)).

Thus, the court finds that Ms. Johnson may properly plead a claim of unjust enrichment concurrently with and as an alternative to her individual claim for breach of warranty. The court finds that Ms. Johnson may so plead even if her unjust enrichment claim is not specifically labeled as an alternative theory of recovery.

## VII.   Blendtec's Disclaimers

Citing to no case law or other authority, Blendtec argues that this court should dismiss all of Ms. Johnson's claims because she fails to establish that a reasonable consumer would be misled by Blendtec's horsepower advertisements. Blendtec observes that all of the Blendtec webpages cited in the Complaint contain a disclaimer that states, in part, "IN ACTUAL USE, BLENDTEC MOTORS DO NOT OPERATE AT THE PEAK HORSEPOWER SHOWN." Blendtec also argues that the electrical ratings featured on Blendtec's labeling and packaging provide further notice to consumers that the blenders did not reach peak horsepower in household use. Ms. Johnson counters that a reasonable consumer would be misled by Blendtec's horsepower advertising; that Blendtec's disclaimer was insufficient to put consumers on notice, as the disclaimers were not prominently or consistently displayed online across all of Blendtec's advertising platforms; and that the disclaimers were not included on HSN's website. Further, Ms. Johnson argues that Blendtec has no support for its argument that a reasonable consumer understands the implications that electrical ratings have on horsepower capabilities.

As explained by the Utah Supreme Court in reviewing a claim made under the UCSPA, "[a]n affirmation of fact, a promise, or a description of the goods must be judged objectively against the meaning that a reasonable person would have taken from the statement." *Div. of Consumer Prot. v. GAF Corp.*, 760 P.2d 310, 311, 315 (Utah 1988). "In determining reasonableness, a court should consider such factors, among others, as '(1) the ability of the buyer to see and understand for himself, (2) the vagueness of the statement, and (3) the incredibility of the statement.'" *Id.* (citation omitted). "Actual reliance on the statement need not be shown, . . . the statement need only form a 'part of the basis of the bargain.'" *Id.* (citations omitted). The Ninth Circuit has found that the "reasonable consumer" analysis is typically "a question of fact not appropriate for decision on demurrer." *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (citations omitted). To that end, the Ninth Circuit has reasoned that granting a motion to dismiss should only be done in the "rare situation[s]," such as when an "advertisement itself made it impossible for the plaintiff to prove that a reasonable consumer was likely to be deceived." *Id.* at 939; *see also Anthony v. Pharmavite*, No. 18-CV-2636, 2019 WL 109446, at *3 (N.D. Cal. Jan. 4, 2019) (denying a motion to dismiss because court could not "conclude as a matter of law that no reasonable consumer would be misled by the labeling" of the product at issue).

In *Williams*, the Ninth Circuit denied a motion to dismiss, finding that a reasonable consumer could be misled by packaging for fruit snacks suggesting that the product was made with fruits or fruit juices. 552 F.3d at 939. The product was called "fruit juice snacks," and the packaging depicted various fruits, stated that the product was made with "fruit juice and other all natural ingredients," and stated that the product was "just one of a variety of nutritious Gerber Graduates foods and juices that have been specifically designed to help toddlers grow up strong and healthy." *Id.* That there was an ingredient list in small print on the side of the product did not cure the

misrepresentation. *Id.* The court "disagree[d] . . . that reasonable consumers should be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box." *Id.* Further, the court found that manufacturers should not be permitted to "mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield from liability for the deception." *Id.* Rather, "reasonable consumers expect the ingredient list contains more detailed information about the product that *confirms* other representations on the packaging." *Id.* at 939–40 (emphasis added).

Here, the court finds that Ms. Johnson has pleaded facts sufficient to establish that a reasonable consumer could be misled by Blendtec's horsepower representations. Thus, Blendtec's disclaimer regarding the horsepower does not necessarily shield it from liability. In her Complaint, Ms. Johnson alleged that she purchased her blender in reliance on Blendtec's claim that it would reach 3.0 Peak HP during normal use and operation. But subsequent testing by a third-party laboratory revealed that Ms. Johnson's model functioned at 30.2% below the claimed horsepower. Ms. Johnson further alleged that she purchased her Blendtec blender online from HSN, and while the "features" listed along with her blender on HSN's website stated that it had a "3.0 peak horsepower motor," there was no disclaimer regarding the operating horsepower. Ms. Johnson alleges that the 3.0 horsepower claim is also present on Blendtec's own website. The court finds that the question of whether a reasonable person could be misled by Blendtec's horsepower representations presents an issue of fact that cannot be resolved on a motion to dismiss.

For the same reasons, the court finds that the existence of Blendtec's disclaimer about the horsepower does not shield it from liability. First, the pleadings do not disclose whether the disclaimer was present on the HSN website, where Ms. Johnson purchased her blender. Second, there are questions as to whether the disclaimer, if any, would only be visible to a consumer *after*

the consumer has purchased and received the product. *See In re Santa Fe Nat. Tobacco Co. Mktg. & Sales Practices and Prods. Liab. Litig.*, 288 F. Supp. 3d 1087, 1233 (D. N.M. 2017) (finding that a package's disclosure did not cure a "deception inflicted upon a reasonable consumer" when "it is not clear that [reasonable consumers] would have the opportunity to inspect" the product before purchasing). Third, there are questions of fact as to whether the disclaimer itself shields Blendtec from liability. A manufacturer should not be permitted to make misrepresentations to consumers and then rely on a disclaimer to "provide a shield from liability for the deception." *Williams*, 552 F.3d at 939. Just as reasonable consumers in *Williams* expected ingredient lists to provide additional information about a product that "*confirms* other representations on the packaging," Blendtec consumers would expect to find additional information that *confirms* Blendtec's claim about horsepower rather than information that directly contradicts it. Finally, the court is unpersuaded by Blendtec's argument that the wattage information attributable to each blender provides notice of its horsepower capabilities. Blendtec has provided no evidence to indicate that reasonable consumers understand the correlation between wattage and horsepower. Because of the possibility that a consumer could be misled by Blendtec's horsepower representations, Blendtec's motion to dismiss on this basis is denied.

## CONCLUSION

For the foregoing reasons, the court GRANTS IN PART AND DENIES IN PART Blendtec's Motion to Dismiss (ECF No. 19) and orders as follows:

1. **COUNT I**: The court GRANTS the Motion to Dismiss with respect to Ms. Johnson's class claim for breach of express warranty, but DENIES the Motion to Dismiss with respect to Ms. Johnson's individual claim for breach of express warranty under Utah law.

2. **COUNT II**: The court GRANTS the Motion to Dismiss with respect to Ms. Johnson's class claim for breach of the implied warranty of merchantability, but DENIES the Motion to

Dismiss with respect to Ms. Johnson's individual claim for breach of the implied warranty of merchantability under Utah law.

3. **COUNT III**: The court GRANTS the Motion to Dismiss with respect to Ms. Johnson's class claim for unjust enrichment, but DENIES the Motion to Dismiss with respect to Ms. Johnson's individual claim for unjust enrichment under Utah law.

4. **COUNT IV**: The court GRANTS the Motion to Dismiss with respect to Ms. Johnson's class claim for negligent misrepresentation, but DENIES the Motion to Dismiss with respect to Ms. Johnson's individual claim for negligent misrepresentation under Utah law.

5. **COUNT V**: The court GRANTS the Motion to Dismiss with respect to Ms. Johnson's class claim for fraud, but DENIES the Motion to Dismiss with respect to Ms. Johnson's individual claim for fraud under Utah law.

6. **COUNT VI**: The court GRANTS the Motion to Dismiss with respect to Ms. Johnson's class claim for damages under the UCSPA, but DENIES the Motion to Dismiss with respect to Ms. Johnson's class claim for declaratory relief and injunctive relief under the UCSPA and with respect to Ms. Johnson's individual claim for damages under the UCSPA.

7. **COUNT VII**: The court GRANTS the Motion to Dismiss with respect to Ms. Johnson's claims under the VCPA.

Signed November 16, 2020.


BY THE COURT

_____
Jill N. Parrish
United States District Court Judge